MOORMAN, Judge,
concurring in the result:
In agreeing with the majority, I recognize that we are bound by the high degree of deference that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) traditionally has shown for the Secretary’s interpretation of his own regulatory words, even when the interpretation has first been advanced during litigation, Reizenstein v. Shinseki, 583 F.3d 1331, 1335 (2009) (citing Cathedral Candle Co. v. U.S. Int’l Trade Comm’n, 400 F.3d 1352, 1364 (2005)). Today, we measure this high degree of deference against a VA regulation that, on its face, appears most easily construed to convey only one meaning — that a veteran’s collective service-connected disabilities may be considered in determining whether referral for an extraschedular rating is warranted. The Secretary, however, has offered an alternative meaning for the language in the regulation that is plausible, albeit not obvious; and he provides an affidavit asserting that a future change to the regulation will clarify his offered alternative meaning — i.e., that each of a veteran’s disabilities is to be- considered separately under § 3.321(b)(1).
Without the Secretary’s stated interpretation as to what his words were intended to convey, I believe a remand would have been warranted here based on the Board’s failure, in denying referral for an extras-chedular rating, to consider the legal standard of 38 C.F.R. § 3.321(b)(1) that sprouts from the otherwise seemingly plain meaning of the language used in the regulation. This legal standard is whether the appellant’s “disability picture” that includes service-connected disabilities of both the right and left knees (as well as service-connected heart disease) warranted referral for an extraschedular rating under 38 C.F.R. § 3.321(b)(1) on the basis of his collective service-connected disabilities.
In the absence of the Secretary’s recently asserted interpretation, I would apply the simple principle that words have meaning. And, even in the law and regulations implementing the law, plain words should *249 have plain meanings. The Secretary, in 38 C.F.R. § 8.321(b)(1) (emphasis added), addresses exceptional cases that require special review in order to “accord justice.” These “cases,” not “claims,” are those in which the schedular “evaluations ” are found to be inadequate. Under such circumstances, the under secretary for benefits or the director of the compensation service is authorized to approve an extras-chedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected “disability or disabilities.” The Secretary sets forth the governing norm in these exceptional cases: A finding that the “case” presents such an exceptional or unusual “disability picture ” with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular “standards.”
Clear regulatory statements, plainly expressed, using both singular and plural forms of important words, it seems to me, almost always should be applied as written. This is especially true when the plain language of the regulation leads to a more expansive, and pro-veteran, application of the rule. To do otherwise potentially gives heed not to plain language that favors injured veterans but, rather, to guiding interpretive principles that mirror those enunciated in Lewis Carroll’s, Through the

Looking Glass:

T don’t know what you mean by “glory”,’ Alice said.
Humpty Dumpty smiled contemptuously. ‘Of course you don’t — till I tell you. I meant “there’s a nice knock-down argument for you!” ’
‘But “glory” doesn’t mean “a nice knockdown argument”,’ Alice objected.
“When I use a word,’ Humpty Dumpty said, in rather a scornful tone, ‘it means just what I choose it to mean — neither more nor less.’
‘The question is,’ said Alice, ‘whether you can make words mean so many different things.’
‘The question is,’ said Humpty Dumpty, ‘which is to be master — that’s all.’
Lewis Carroll, Through the Looking Glass, ch. VI (1865), available at http:// www.gutenberg.org/ebooks/23718.
Although the words of § 3.321(b)(1), on initial review, appeared to me to be clear on their face, I must afford the Secretary deference in the plausible interpretation of his Agency’s own regulation. Smith v. Nicholson, 451 F.3d 1344, 1349-50 (Fed.Cir.2006) (stating that the Secretary’s interpretation of his own regulations is “ ‘of controlling weight unless it is plainly erroneous or inconsistent with the regulation’ ” (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945))); see Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). I do so based on precedent, despite the fact that the Secretary changed this regulation in 1961 to discuss extraschedular consideration for the veteran’s complete “disability picture” and to add the words “or disabilities” where they had not previously appeared. See Secretary’s Memorandum of Law, Attachment D; Secretary’s Second Memorandum of Law, Attachment J. And, I do so despite the fact that the use of the plural “disabilities,” following, in a phrase, “disability” and the conjunction “or,” in the regulation appears consistent with defining “disability picture” to include both an individual disability and disabilities in the aggregate.
Further, I note that the Secretary’s offered meaning of the language comes subsequent to this Court’s observation in 2003 that “[ajlthough it is well settled that ex-traschedular consideration [ (under § 3.321(b)(1)) ] and TDIU claims are not *250 necessarily ‘inextricably intertwined’ ... here both adjudications require a complete picture of the appellant’s service-connected disabilities and their effect on his employa-bility.” Brambley v. Principi, 17 Vet.App. 20, 24 (2008) (citation omitted) (emphasis in original). One Judge specifically noted in Brambley that the words of this regulation indicated that multiple disabilities were to be considered in the aggregate when addressing the exceptional case warranting extraschedular consideration:
[T]he Board erred in its application of the regulation by failing to determine whether the appellant’s service-connected disabilities as a whole entitled him to extraschedular-rating consideration under § 8.321(b)(1). When VA evaluates a case for extraschedular consideration, the regulation directs the examination of the veteran’s “average earning capacity impairment due exclusively to his service-connected disability or disabilities,”
Id. at 26 (Steinberg, J., concurring) (emphasis in original).
The Secretary, thereafter, took no action to amend this regulation to conform to his presently asserted interpretation and intended meaning of these words. Had he paid heed to Judge Steinberg’s unambiguous warning concerning the plain meaning of his regulation, the Secretary, during these past 10 years since Brambley, could easily have changed the regulation to clarify and reflect his presently asserted meaning. Instead, the Secretary has waited until the present litigation to submit an affidavit asserting that a future change to the regulation will clarify his offered meaning of these words, i.e., that each of a veteran’s disabilities is to be considered separately under § 3.321(b)(1) has always been what the Secretary’s words were intended to convey.
The Federal Circuit has recently made it abundantly clear that the mere fact that the Secretary has had ample opportunity to revise his regulations to conform to a currently asserted meaning, but did not do so, is of no consequence. In Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed.Cir.2013), a unanimous panel of that court concluded that a newly asserted interpretation of VA’s regulation § 3.303(b) is controlling despite the following circumstances: (1) VA had acquiesced in this Court’s interpretation of 38 CFR § 3.303(b) for 15 years; (2) VA had not asserted a contrary meaning to the regulation in its initial briefing of the Walker case in either this Court or the Federal Circuit; (3) VA had issued a Notice of Proposed Rulemaking in 2010 (with mandatory review by the Veterans Benefits Administration, VA General Counsel, and the Office of Management and Budget before publication in the Federal Register), which fully embraced this Court’s holding with respect to the interpretation of the regulation;[7] (4) VA had not sought to contest that meaning despite application of the same meaning in several precedential decisions since 1997; (5) VA had not contested the Federal Circuit’s own use of the same interpretation in Groves v. Peake, 524 F.3d 1306, 1309 n. 1 (Fed.Cir.2008); *251 and (6) VA adopted an alternative interpretation only after the Federal Circuit directed additional briefing following oral argument.
Therefore, although VA’s interpretation of its regulation may hang on the thinnest thread, Federal Circuit precedent requires deference despite an alternative reading of the regulation that appears clear on its face and favors veterans. This Court, which has a duty to follow the Federal Circuit’s precedents in such matters, thus must defer to the Secretary’s interpretation in the case now before the Court.
In applying the Federal Circuit’s decisions, grounded on U.S. Supreme Court precedent, concerning the deference due to an agency in its interpretation of its own regulations, I reluctantly conclude that the Secretary has presented a plausible, even though strained, alternative reading of § 3.321(b)(1) that warrants an affirmance of the Board’s decision. I therefore concur in the majority opinion in this case.
However, this case has caused me to ponder whether special rules of construction should be applied to VA regulations in circumstances such as these. The U.S. Supreme Court has recognized that the statutes affecting veterans benefits should be read and applied in a pro-veteran manner. See Brown v. Gardner, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (ruling against the Government where the statutory text and “reasonable inferences from it” supported the veteran’s position); see also Henderson ex rel. Henderson v. Shinseki, — U.S. -, 131 S.Ct. 1197, 1206, 179 L.Ed.2d 159 (2011) (stating that the Supreme Court has “long applied ‘the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries’ favor.’ ” (quoting King v. St. Vincent’s Hosp., 502 U.S. 215, 220-21 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991))). Likewise, the Federal Circuit has recognized that “[t]he VA disability compensation system is not meant to be a ... stratagem to deny compensation to a veteran who has a valid claim.” Comer v. Peake, 552 F.3d 1362, 1369 (Fed.Cir.2009). I question whether the judicial precedents for reviewing VA’s regulations should always result in the same level of deference afforded to the interpretation of such regulations promulgated by agencies charged with regulating business practices, intellectual property, or international trade. After all, VA serves a purpose unique among Federal agencies, characterized by the legal duty to assist its claimants in perfecting their just claims, supported by legislation requiring that the benefit of the doubt must be given to such claimants, and further undergirded by a uniquely pro-veteran, nonadversarial agency process. See Shinseki v. Sanders, 556 U.S. 396, 412, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (“Congress has made clear that the VA is not an ordinary agency.”). Perhaps VA, as an agency whose mission statement is etched in stone at the Lincoln Memorial and was formulated as part of President Lincoln’s Second Inaugural Address: “to care for him who shall have borne the battle and for his widow, and his orphan,”[8] should, in this case, be afforded a less strict level of judicial deference.[9]
*252 That VA’s regulations generally are confusing, not well organized, and in dire need of reformulation is reflected in the declaration accompanying the appellee’s June 15, 2012, memorandum of law in the instant case. This case, indeed many of the cases decided by this Court, makes manifest the need for clearly written regulations. The sooner such clarification is provided, the sooner veterans and their families, the courts, and VA will no longer need to defer to the “intended meaning” of regulations that were written and then modified decades before judicial review. I look forward to that day.

. The Secretary’s Supplementary Information accompanying the proposed rule stated:
Proposed § 5.243(d), based on portions of current § 3.303(b), would provide rules for establishing service connection based on the continuity of signs or symptoms. That is, if the chronicity provisions do not apply, VA will grant service connection if there is competent evidence of signs or symptoms of an injury or disease during service or the presumptive period, of continuing signs or symptoms, and of a relationship between the signs or symptoms demonstrated over the years and the veteran’s current disability. See Savage v. Gober, 10 Vet.App. 488, 498 (1997).
75 Fed.Reg. 53,744, 53,749 (Sept. 1, 2010) (Proposed Rule).

. In 1959, these words became VA's motto and were etched on plaques which flank the main entrance to VA’s headquarters in Washington, DC.

. I further note that many of VA’s regulations were drafted at a time when they were not subject to judicial scrutiny in any form. See Gardner, 513 U.S. at 122, 115 S.Ct. 552. Also, the Supreme Court recently articulated a lower standard of deference, aptly observing that, ’’[o]ur practice of deferring to an agency’s interpretation of its own ambiguous regulations , undoubtedly has important advantages, but, this practice also creates a risk that agencies will promulgate vague and open- *252 ended regulations that they can later interpret as they see fit.” Christopher v. SmithKline Beecham Corporation,-U.S.-, 132 S.Ct. 2156, 2168, 183 L.Ed.2d 153 (2012).